UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FINALLY SUNDAY LLC,

      Plaintiff,

  v.

FRIDAY BEERS LLC and ALMOST
FRIDAY LLC,

      Defendants.

24-CV-28-LJV
DECISION & ORDER

---

On January 8, 2024, Finally Sunday LLC ("Finally Sunday") sued the defendants, Friday Beers LLC ("Friday Beers") and Almost Friday LLC ("Almost Friday"), for violations of federal trademark law and related state law claims based on the defendants' use of the trademark "Almost Gameday."  Docket Item 1.  Several months later, the defendants moved to dismiss the case for improper venue, failure to state a claim, and lack of personal jurisdiction over Almost Friday; in the alternative, the defendants asked this Court to transfer the case to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a).  Docket Item 15.  After Finally Sunday responded to the motion, Docket Item 21, the defendants replied, Docket Item 24.

For the reasons that follow, this Court grants the defendants' motions to transfer the case to the Central District of California.  The defendants' motions to dismiss for lack of personal jurisdiction and improper venue are denied without prejudice.  The Court leaves the merits of the motion to dismiss for failure to state a claim to the Central District of California.

## BACKGROUND[1]

The plaintiff, Finally Sunday, is a clothing and apparel company that owns the registered trademark "Almost Gameday," which it applied for and began using in August 2021.  Docket Item 1 at ¶¶ 9-12.  On November 10, 2021, defendant Almost Friday filed a trademark application for the same mark, alleging a first-use date of July 21, 2021—three weeks before Finally Sunday's first-use date.  *Id.* at ¶ 12.  On August 16, 2022, the United States Patent and Trademark Office ("USPTO") notified Almost Friday of Finally Sunday's trademark application and cautioned that if Finally Sunday's trademark registered, Almost Friday's application might be refused due to likelihood of confusion between the marks.  *Id.* at ¶ 13.  Finally Sunday's trademark eventually was registered on August 15, 2023.  *Id.* at ¶ 11.

In the meantime, Finally Sunday began advertising T-shirts and clothing items with its "Almost Gameday" mark in May 2023, and it sold its first T-shirt with the mark on May 19, 2023.  *Id.* at ¶ 14.  About a month later, defendant Friday Beers sent a cease-and-desist letter to Finally Sunday alleging that Friday Beers owned the "Almost Gameday" mark.[2]  *Id.* at ¶ 16; Docket Item 1-1 at 15-17.[3]  Finally Sunday responded on July 1, and the parties "engaged in discussions regarding a potential partnership"

---

[1] Unless otherwise noted, the following facts are taken from the complaint and its attached exhibits, Docket Items 1 and 1-1.  "[I]n deciding a motion to transfer venue, the [c]ourt may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013).

[2] The complaint refers to the "Almost Sunday" trademark, but this appears to be a typographical error.  *See* Docket Item 1 at ¶ 16 (capitalization omitted).

[3] Page numbers in docket citations refer to ECF pagination.

2

throughout July and August. Docket Item 1 at ¶¶ 17, 19; Docket Item 1-1 at 34. On August 10, 2023, however, the defendants "ceased communicating with Finally Sunday and began unlawfully using Finally Sunday's federally-registered trademark Almost Gameday to market, offer for sale, sell, advertise, and[] distribute clothing and apparel." Docket Item 1 at ¶ 20 (capitalization omitted).

The next month, on September 25, Finally Sunday received a term sheet from the BFLO Store—a clothing, apparel, and novelty store in Western New York—for the BFLO store to sell clothing with the "Almost Gameday" mark. *Id.* at ¶ 15. The term sheet provided that Finally Sunday would receive a six percent royalty on each clothing item sold with the mark. *Id.* But the BFLO store ultimately "decided not to pursue the [t]erm [s]heet" due to the "[d]efendants' use of Finally Sunday's trademark and the likelihood of confusion." *Id.* at ¶ 23. And to this day, the defendants "continue to . . . market, offer for sale, sell, advertise, and[] distribute clothing and apparel including Finally Sunday's federally-registered trademark." *Id.* at ¶ 24.

## DISCUSSION

I. **THE MOTIONS TO DISMISS OR TRANSFER**

   A. **Personal Jurisdiction and Venue**

"Although it is common to resolve challenges to personal jurisdiction before addressing motions to transfer venue, it is not required that courts do so." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) (internal citations omitted). "Courts may instead address venue applications at the threshold, 'when there is a sound prudential justification for doing so,' because 'neither personal jurisdiction nor venue is fundamentally preliminary in the

3

sense that subject[ ]matter jurisdiction is." *Id.* (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).

Here, the parties hotly dispute whether this Court has personal jurisdiction over Almost Friday and whether venue is proper in this district. And for that reason, it is prudent to address the motion for transfer first.[4] *See Everlast World's Boxing Headquarters*, 928 F. Supp. 2d at 741-42 (resolving motion to transfer venue first where personal jurisdiction was disputed); *AGCS Marine Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp. 2d 640, 649 (S.D.N.Y. 2011) (declining to address motions to dismiss for lack of personal jurisdiction and improper venue after concluding that transfer was warranted under 28 U.S.C. § 1404(a)).

### B. Transfer under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992). A party seeking transfer bears the "burden of making out a strong case for transfer" through clear and convincing evidence. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quoting *Filmline (Cross-County) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).

---

[4] Because this Court does not decide whether venue lies in this district, it likewise denies the defendants' request to dismiss the case outright for improper venue.

4

"In deciding motions to transfer venue under [section] 1404(a)," a court first asks "whether the action could have been brought in the transferee district." *Everlast World's Boxing Headquarters*, 928 F. Supp. 2d at 743 (quoting *Robertson v. Cartinhour,* 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011)). If the answer to that question is yes, the court then asks "whether transfer would be an appropriate exercise of [its] discretion." *Id.* (quoting *Robertson*, 2011 WL 5175597, at *3).

"A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the [s]tate in which the district is located." 28 U.S.C. § 1391(b)(1). "For . . . venue purposes," a limited liability company is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."[5] *Id.* § 1391(c)(2).

Because all the defendants in this case reside in the Central District of California, *see* Docket Item 16 at ¶¶ 4-9, this case certainly could have been brought in that district in the first instance.[6] As a result, this Court turns to the second half of the section 1404(a) inquiry—whether transfer is an appropriate exercise of the Court's discretion.

---

[5] If the company is a plaintiff in the action at issue, it is deemed to be a resident (for venue purposes) "only in the judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c)(2).

[6] As noted above, *see supra* note 1, "in deciding a motion to transfer venue, the [c]ourt may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue," *Everlast World's Boxing Headquarters*, 928 F. Supp. 2d at 737 n.1. Here, Finally Sunday does not contest the defendants' assertion that they reside in California. *See* Docket Item 21 at ¶¶ 4-17; Docket Item 21-2 at 13-15. Instead, Finally Sunday argues that the case could not have been brought in the Central District of California because *Finally Sunday* does not reside there. *See* Docket Item 21-2 at 13-15. But, as explained below, *see infra* Section I.B.4, the

To "[a]ssess[] whether transfer is a valid exercise of discretion," a court considers:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded [to] the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Everlast World's Boxing Headquarters*, 928 F. Supp. 2d at 743 (collecting cases). The defendants argue that "[a]pplying these factors and the circumstances of this case, strongly favors, and indeed compels, transfer to the Central District of California." Docket Item 18 at 15. For the reasons that follow, this Court agrees.

### 1. Factors that Favor Transfer

#### a. Factors 1 and 5: The Convenience of the Witnesses and the Availability of Process to Compel Their Attendance

First, as the defendants observe, *see id.* at 15-18, "the convenience of witnesses"—which "[c]ourts typically regard . . . as the most important factor in considering a [section] 1404(a) motion"—strongly favors transfer. *See Berger v. Cushman & Wakefield of Pennsylvania, Inc.*, 2013 WL 4565256, at *5 (S.D.N.Y. Aug. 28, 2013) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004)). Indeed, Finally Sunday does not contest the defendants' assertion that most of the non-party witnesses are located in the Central District of California. *See* Docket Item 21-2 at 12-15.

---

residence of the plaintiff is not relevant to the question of where the suit could be brought.

The ability of this Court to subpoena witnesses likewise cuts in favor of transfer. Under Federal Rule of Civil Procedure 45, a "[c]ourt's subpoena power is limited to within 100 miles of where a person 'resides, is employed, or regularly transacts business in person.'" See *Celestin v. Martelly*, 698 F. Supp. 3d 443, 464 (E.D.N.Y. 2023) (quoting Fed. R. Civ. P. 45(c)). Thus, the witnesses located in the Central District of California are well outside the subpoena power of this Court.

Finally Sunday argues that the "defendants' implication that [Finally Sunday] would not be able to depose witnesses located in California if the case is litigated in New York is ridiculous in this day and age, when virtual court appearances and depositions are commonplace." Docket Item 21-2 at 14. But the availability of virtual depositions has no bearing on this inquiry.[7] The point, as the defendants note, is that "this Court lacks subpoena power over virtually all defense witnesses," Docket Item 24 at 10, and therefore could not compel them to come to trial. See *Romano v. Banc of Am. Ins. Servs.*, 528 F. Supp. 2d 127, 133 (E.D.N.Y. 2007) ("[C]ertainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury[,] or most litigants." (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947))).

Therefore, this Court finds that both the convenience of the witnesses and the ability to compel their attendance cut in favor of transfer.

---

[7] What is more, that argument significantly undercuts Finally Sunday's claim that it would be a hardship for it to litigate this case in the Central District of California.

7

b. *Factor 4: The Locus of Operative Facts*

The defendants argue that the locus of operative facts also favors transfer. Docket Item 18 at 18-19. The "Almost Gameday" mark "was developed and first used in [the Central District of California]," the defendants say, and "all goods produced bearing the [m]ark were produced in and distributed from that [d]istrict." *Id.* at 10.

In response, Finally Sunday argues that "the infringing activity that forms the basis for [its] claims is the sale and/or distribution of the infringing products in commerce, which has happened in the Western District of New York through internet sales." Docket Item 21-2 at 14. Thus, Finally Sunday posits, "the location where the infringing products were produced is irrelevant to a trademark claim, as a trademark claim requires [the] defendants' use of the mark in commerce." *Id.* But as the defendants observe, *see* Docket Item 24 at 11, "[c]ourts have found . . . that where defendants['] goods are sold in many states, sales alone are not enough to establish a material connection to the forum and override the other factors favoring transfer." *Lencco Racing Co. v. Arctco, Inc.*, 953 F. Supp. 69, 73 (W.D.N.Y. 1997); *see also id.* at 71 (noting in patent infringement action that "[c]ourts have found that the preferred forum for an infringement claim is in the district where the alleged infringement occurred"). In other words, the fact that sales may occur *everywhere* does not preclude the locus of operative facts from being *somewhere*.

The locus of operative facts therefore also favors transfer.

8

### 2. Factors that Weigh Against Transfer

#### a. Factor 8: Finally Sunday's Choice of Forum

Finally Sunday's choice of forum deserves "substantial consideration." *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (quoting *A. Olinick & Sons v. Dempster Bros.*, 365 F.2d 439, 444 (2d Cir. 1966)). But as explained above, the allegedly infringing activity occurred in California, where all the defendants and many of the witnesses are located. *See supra* Section I.B.1. Accordingly, while Finally Sunday's choice of forum weighs against transfer, that weight does not overcome the other factors in the section 1404(a) analysis. *See Everlast World's Boxing Headquarters*, 928 F. Supp. 2d at 748 (noting that the plaintiff's choice of forum "merits less deference where the connection between the case and the chosen forum is minimal" (citation and internal quotation marks omitted)).

#### b. Factor 7: The Court's Familiarity with Governing Law

This Court's familiarity with governing law also weighs—albeit barely—against transfer. This factor "is 'one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved.'" *Id.* at 747 (citation omitted). Although some of Finally Sunday's claims arise under New York law, *see* Docket Item 1 at ¶¶ 50-68, Finally Sunday does not point to any particularly unique questions of New York law that are or would be raised by those claims. And this Court has no reason to doubt that the Central District of California would be just as capable as this Court of resolving whatever state law questions might arise in this case. So to the extent that this factor weighs against transfer, that weight is minimal.

9

   c. *Factor 6: The Relative Means of the Parties*

The defendants say that because "discovery has not begun, [they] are presently unaware of [Finally Sunday]'s financial means." Docket Item 18 at 22. As a result, they contend that this factor "is neutral." *Id.* Finally Sunday, however, contends that "both defendants are larger companies with much greater resources" and are therefore better able than the plaintiff to litigate "a suit in a state other than the one where they maintain their principal offices." Docket Item 21-2 at 15. Based on Finally Sunday's representation, this Court assumes for the purposes of its analysis that this factor cuts modestly against transfer.

  3. **Neutral Factors**

   a. *Factor 2: The Convenience of the Parties*

The defendants argue that the convenience of the parties also supports transfer. *See* Docket Item 18 at 19-20. But their argument really is about the convenience of witnesses, *see id.*, which this Court addressed above. With respect to the parties, it seems that the Central District of California is more convenient for the defendants but less convenient for the plaintiff. Thus, the Court finds this factor to be neutral.

   b. *Factor 3: The Location of Relevant Documents and Ease of Access to Sources of Proof*

The defendants note that most of the documents are located in the Central District of California, but they concede that "this factor is largely neutral given the prominence of electronic discovery." Docket Item 18 at 21. This Court agrees.

   c. *Factor 9: Trial Efficiency*

Neither party addresses this factor, *see* Docket Items 18 and 21-2, and this Court therefore finds it to be neutral.

10

\* \* \*

So three factors strongly favor transfer, three weigh modestly in favor of keeping the case in this district, and three are neutral. Taking all the factors together—especially the convenience of the witnesses, which is often regarded as the most important factor—this Court finds that transfer is warranted. Finally Sunday's argument boils down to the fact that it would be inconvenient for it to litigate in California. That may well be true, but that consideration does not outweigh the factors that support transfer.

### 4. Personal Jurisdiction over Finally Sunday

Finally Sunday spends the bulk of its opposition arguing that transfer would be improper because the Central District of California does not have personal jurisdiction over Finally Sunday. *See* Docket Item 21-2 at 13-15. According to Finally Sunday, the "defendants have overlooked a crucial requirement of a transfer of venue to the Central District of California—wherever a case is transferred, the court to which the case is transferred must have personal jurisdiction over *all parties* to the case." *Id.* at 13. And, Finally Sunday says, "this case simply cannot be transferred there because California courts lack personal jurisdiction over the plaintiff." *Id.* at 14.

The only case that Finally Sunday cites for this novel proposition is an admiralty case from four decades ago, which states that "the transferee court must have subject matter jurisdiction . . . over all the parties." *Trade Arbed, Inc. v. M.V. ADRIATIK*, 1983 WL 188050, at \*2 (S.D.N.Y. May 16, 1983). But as the defendants observe, the court's analysis in *Trade Arbed* makes clear that by "all parties," it meant "all defendants." *See id.* at \*1-2; *see also* Docket Item 24 at 3 ("The [c]ourt in *Trade Arbed* held that a court

11

may transfer a case only to a venue that has personal jurisdiction over all defendants *not the plaintiff*, and in declining to transfer venue, held that transfer would be inappropriate because the transferee court lacks personal jurisdiction over one *defendant*." (underline omitted)).

What is more, 28 U.S.C. § 1404—which governs change of venue—says nothing about personal jurisdiction over the plaintiff. Rather, section 1404 permits transferring a case to "any other district or division *where it might have been brought* or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (emphasis added). Here, the plaintiffs clearly "might have . . . brought" this case in, and consented to the jurisdiction of, the Central District of California. *See id.* This Court therefore rejects Finally Sunday's contention that the transferee district would lack personal jurisdiction over the plaintiff.

## **CONCLUSION**

For the reasons stated above, after weighing the factors relevant to a motion for transfer under 28 U.S.C. § 1404(a), this Court concludes that the case should be transferred to the Central District of California. The defendants' motion to transfer, Docket Item 15, therefore is GRANTED. The defendants' motions to dismiss for lack of personal jurisdiction and improper venue are DENIED without prejudice. The Court leaves the merits of the motion to dismiss for failure to state a claim to the Central District of California.

The Clerk of the Court shall transfer this case to the United States District Court for the Central District of California and close the case.

SO ORDERED.

Dated:   February 5, 2025
         Buffalo, New York

                                                 */s/ Lawrence J. Vilardo*
                                                 LAWRENCE J. VILARDO
                                                 UNITED STATES DISTRICT JUDGE